# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| United States of America, ) | |
| ) | |
| Plaintiff, ) | **ORDER DENYING MOTION** |
| ) | **TO REDUCE SENTENCE** |
| vs. ) | |
| ) | Case No. 3:12-cr-31-5 |
| Raul Tovar, ) | |
| ) | |
| Defendant. ) | |

Before the Court is Defendant Raul Tovar's motion to reduce sentence filed on May 21, 2020. Doc. No. 513. The Government responded in opposition to the motion on June 2, 2020. Doc. No. 515. Tovar filed a reply on June 22, 2020. Doc. No. 518. Tovar seeks a reduction in his sentence to time served based on "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A) as amended by the First Step Act of 2018 ("FSA"). Tovar also moves for the appointment of counsel. Doc. No. 514. For the reasons below, Tovar's motions are denied.

## I.   BACKGROUND

On March 21, 2012, the grand jury returned an indictment charging Tovar with conspiracy to possess with intent to distribute and distribute a controlled substance, in violation of 21 U.S.C. §§ 841 and 846. Specifically, the grand jury charged that the conspiracy involved in excess of 500 grams of a mixture and substance containing a detectable amount of methamphetamine. Id.

On April 26, 2012, the Government filed an information to establish prior convictions for an enhanced sentence pursuant to 21 U.S.C. § 851(a)(1). Doc. No. 88. The information listed the following offenses committed on or about April 30, 2007, in Richland County, North Dakota: "Possession of a Controlled Substance (2x); Possession of a Controlled Substance with Intent to Deliver (2x); and Possession of Drug Paraphernalia," with court file numbers 39-07-K-0247, 39-

07-K-0248, 39-07-K-0249, and 39-07-K-0250. Id. at 1–2.[1] The information also included a conviction for Possession of Drug Paraphernalia committed on or about August 8, 2007, in Richland County. Id. at 2. Tovar was originally sentenced for all these state offenses on December 7, 2007. Id. at 1–2. Due to having two or more prior convictions for felony drug offenses, Tovar faced a mandatory minimum sentence of life imprisonment if convicted of the instant offense. Id. at 2–3.

After a five-day trial, a jury found Tovar guilty of the offense charged in the indictment. Doc. Nos. 292 and 294. Tovar thereafter appeared before this Court[2] for sentencing on May 1, 2013. Doc. No. 331. The Court found that the total offense level was 32 and Tovar's criminal history category was V, which would have resulted in an advisory guideline range of 188 to 235 months of imprisonment but for the § 851 enhancement. Id. Noting that his hands were reluctantly tied by statute, Judge Erickson sentenced Tovar to the mandatory minimum of life imprisonment:

> All right. Were it within my power, I would sentence to less than life in prison. I think that the conduct in this particular case is frankly not the type of conduct that ordinarily would warrant a life sentence. The mandatory minimums are what they are. I have said in the past that I have fundamental disagreements with the mandatory minimum sentences but I'm not a member of Congress. They get to make the laws that they wish.

Doc. No. 358 at 8:25–9:8.

Now 56 years old, Tovar is currently serving his sentence at USP Tucson. Tovar asserts that he suffers from diabetes, which is substantiated by medical records attached to his

---

[1] Comparing the § 851 information with the attached judgments and the criminal history provided in Tovar's Presentence Investigation Report, it appears that there should only be one conviction for Possession of a Controlled Substance with Intent to Deliver, Case No. 07-K-0248. See Doc. No. 88-1; Doc. No. 329, ¶¶ 47–50.

[2] The Honorable Ralph R. Erickson, then Chief Judge of the United States District Court for the District of North Dakota, now Circuit Judge of the United States Court of Appeals for the Eighth Circuit.

compassionate release motion. See Doc. No. 513-4. Tovar sent a request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) to the warden at USP Tucson, which was received on April 23, 2020. Doc. No. 515-1, p. 2. On April 27, 2020, the warden denied Tovar's request. Id. at 7.

## II.    DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). As one narrow exception to that rule, a court "may reduce the term of imprisonment" when "extraordinary and compelling reasons" exist and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission."[3] 18 U.S.C. § 3582(c)(1)(A)(i). The 18 U.S.C. § 3553(a) factors also must support the reduction. Id. The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

### A.    Administrative Exhaustion

Previously, only the BOP Director possessed the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

---

[3] In lieu of extraordinary and compelling reasons, the statute also permits a sentence reduction where a defendant is at least 70 years old and certain additional conditions are met. See 18 U.S.C. § 3582(c)(1)(A)(ii). Tovar is 56 years old, so this avenue for relief is foreclosed.

The warden at USP Tucson received Tovar's compassionate release request on April 23, 2020. More than 30 days have lapsed since then. Therefore, Tovar has met the statute's exhaustion requirement, and the Court will proceed to the merits of his motion.

### B. Extraordinary and Compelling Reasons

The compassionate release statute does not define what constitutes "extraordinary and compelling reasons." Instead, Congress has dictated that the Sentencing Commission, through a policy statement, "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including . . . a list of specific examples." 28 U.S.C. § 994(t). To meet its statutory obligation, the Commission has promulgated USSG § 1B1.13. The policy statement itself largely mirrors the compassionate release statute's language. See USSG § 1B1.13(1)-(3).

More pertinent here is Application Note 1 to the policy statement. So long as a defendant does not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," the Application Note delineates four instances that demonstrate extraordinary and compelling reasons for compassionate release. USSG § 1B1.13(2); id. app. n.1. The first three circumstances set out in subdivisions (A) through (C) pertain to a defendant's medical condition, age, or family circumstances, respectively. See id. app. n.1(A)-(C). Tovar explicitly does not seek relief on these grounds. Rather, his motion rests exclusively on subdivision (D)—the catch-all provision. This subdivision authorizes a sentence reduction when: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than . . . the reasons described in subdivisions (A) through (C)." Id. app. n.1(D).

The Sentencing Commission, currently lacking a quorum, has yet to update § 1B1.13 since Congress amended § 3582(c)(1)(A). The policy statement still contemplates a motion for

4

compassionate release originating solely from the BOP Director—clearly no longer the case. See USSG § 1B1.13. Seizing on this vacuum, several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges. See, e.g., United States v. Fox, Criminal No. 2:14-cr-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); United States v. Beck, 1:13-CR-186-6, 2019 WL 2716505, at *5-6 (M.D.N.C. June 28, 2019); United States v. Cantu, Criminal Action No. 1:05-CR-458-1, 2019 WL 2498923, at *5 (S.D. Tex. June 17, 2019). Other district courts disagree. See, e.g., United States v. Lynn, CRIMINAL NO. 89-0072-WS, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019); United States v. Gutierrez, No. CR 05-0217 RB, 2019 WL 2422601, at *2-3 (D.N.M. June 10, 2019); United States v. Shields, Case No. 12-cr-00410-BLF-1, 2019 WL 2359231, at *4 (N.D. Cal. June 4, 2019). Indeed, this Court recently determined that § 3582(c)(1)(A)'s plain language mandates adherence to the policy statement as written. United States v. Rivera, Case No. 1:16-cr-00239, Doc. No. 61 (D.N.D. Nov. 25, 2019). Nevertheless, even assuming arguendo that the Court possesses the authority to find other extraordinary and compelling reasons for purposes of this compassionate release motion, Tovar does not meet the burden to demonstrate that such reasons exist here.

In his compassionate release motion, Tovar asserts that the following five grounds constitute extraordinary and compelling reasons to grant him a sentence reduction: (1) "Sentence length and the fact that Congress has subsequently reduced the sentencing guidelines that apply to the crimes"; (2) his efforts at rehabilitation; (3) his release plans; (4) his increased risk for serious illness if he contracts COVID-19; and (5) the lack of threat posed to public safety if he is released. Doc. No. 513, p. 8. Two of these alleged grounds are more properly considered in a different portion of the compassionate release analysis. Federal regulations and BOP policy require a

5

proposed release plan when an inmate submits his initial request for compassionate release to the warden. 28 C.F.R. § 571.61(a)(2); BOP Program Statement 5050.50: Compassionate Release/ Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g). Whether an inmate poses a danger to public safety is a separate consideration from whether an extraordinary and compelling reason warrants a reduction. See USSG § 1B1.13. Therefore, in its analysis of the extraordinary and compelling reasons prong, the Court will consider the potential of a lower sentence if Tovar were sentenced today, his rehabilitation, and his concerns about COVID-19.

      1.      <u>Sentence Length</u>

First and primarily, Tovar asserts as an extraordinary and compelling reason the fact that he would be subject to a lower sentence under statute and the United States Sentencing Guidelines ("Guidelines") if he were sentenced today. When Tovar was sentenced in 2013, he was subject to a mandatory minimum sentence of life imprisonment because he had two or more prior convictions for a "felony drug offense." Enacted on December 21, 2018, Section 401 of the FSA modified the Controlled Substances Act to instead require two or more convictions for a "serious drug felony." First Step Act of 2018, Pub. L. No. 115-391, § 401(a)(1), 132 Stat. 5194, 5220 (2018). A "serious drug felony" is an offense for which (1) "the offender served a term of imprisonment of more than 12 months"; (2) "the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense"; and (3) "a maximum term of imprisonment of ten years or more is prescribed by law."[4] 21 U.S.C. § 802(57); 18 U.S.C. § 924(e)(2)(A). It appears that if

---

[4] A "serious drug felony" can either be a federal offense "under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46" or a state offense "involving manufacturing, distributing, or possessing

6

Tovar were sentenced post-FSA, he no longer would have the requisite two or more prior convictions, thus removing the mandatory minimum of life imprisonment.

Tovar's guideline range—without accounting for any applicable mandatory minimum—would also be lower if he were sentenced today. Under the 2012 Guidelines, a drug quantity of at least 500 grams but less than 1.5 kilograms of a methamphetamine mixture yielded a base offense level of 32. USSG § 2D1.1(c)(4) (2012); see also Doc. No. 329, ¶ 32. The 2014 Drug Guidelines Amendment (also known as "Drugs Minus Two") reduced by two the offense levels assigned in the Drug Quantity Table of the Guidelines, resulting in lower guideline ranges for most drug trafficking offenses.[5] USSG app. C supp., amend. 782 (2014). The drug quantity involved in Tovar's offense of conviction would now yield a base offense level of 30 as well as a total offense level of 30 since no adjustments would apply. See USSG § 2D1.1(c)(5); Doc. No. 329, ¶¶ 33–39. Tovar's guideline range thus would decrease from 188-235 months to 151-188 months.

The Court declines to find the potential of a lower sentence today as an extraordinary and compelling reason meriting compassionate release. Tovar seeks what would essentially amount to retroactive application of Section 401 of the FSA, which would contravene the intent of Congress. "Congress has evidenced the intent not to make this provision of the First Step Act generally retroactive by making § 401 applicable to offenses committed before the Act's enactment only if a sentence had not been imposed as of the date of enactment." United States v. Ryerson, No. 3:09-CR-66-TAV-CCS-1, 2020 WL 3259530, at *8 (E.D. Tenn. June 16, 2020); see also United States v. Wiseman, 932 F.3d 411, 417 (6th Cir. 2019), cert. denied, 140 S. Ct. 1237 (2020)

---

with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)." 18 U.S.C. § 924(e)(2)(A).

[5] While this amendment was made retroactive, Tovar was unable to benefit due to the statutory mandatory minimum. See USSG § 1B1.10(a)(2)(B); id. app. n. 1(A).

(second alteration in original) (citation omitted) ("[T]he First Step Act is largely forward-looking and not retroactive, applying only where 'a sentence for the offense has not been imposed as of [the] date of enactment.'"). As such, "it would not be appropriate to deny other defendants a sentence reduction under Section 401 because their sentence was imposed prior to the date of enactment and yet grant defendant a sentence reduction based on Section 401's modifications under § 3582(c)(1)." Ryerson, 2020 WL 3259530, at *8. And without the application of Section 401 to remove the mandatory minimum of life imprisonment, the reduction of the base offense level and corresponding guideline range under Drugs Minus Two is a moot point.

Ultimately, while sympathetic to Tovar's arguments about the length of his sentence, the Court will not substitute its own judgment for that of Congress. Compassionate release under § 3582(c)(1)(A) is not the proper vehicle for relief from this perhaps draconian sentence; rather, congressional action or executive clemency would be necessary.[6]

2. Rehabilitation

Second, Tovar points to his efforts at rehabilitation. He summarizes these efforts as follows:

> Receiving a life sentence will shake most anybody to the core. As I reflected upon the path I chose to follow it was quite clear to me that drug use derailed my life. My response to this realization was to enroll in positive programs immediately. Since coming into the BOP I have successfully completed Challenge, RHU, Drug treatment, RPPs and a variety of other behavioral modification programs. In order to avoid the gang life and stay on the right path I entered the RHU program so I could be placed on a special needs yard. I am currently enrolled in Challenge here at USP Tucson.
>
> I have used my time to reflect, reconnect with my spiritual roots and have maintained my sobriety despite the prevalence of drugs within the prisons. The

---

[6] The Court notes that the potential of a lower sentence under statute and the Guidelines today would, however, be a proper consideration under 18 U.S.C. § 3553(a) if a defendant were to show that some other extraordinary and compelling reason existed for a sentence reduction.

8

> weight of a life sentence can easily break a man but thru my faith I have endured with the hope of another chance.

Doc. No. 513, pp. 12–13.  Tovar also attached to his motion two support letters, BOP records pertaining to his progress in the Challenge program, and a variety of certificates he has earned through BOP programming.  See Doc. Nos. 513-1, 513-2, and 513-3.

As Tovar admittedly recognizes, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of [the applicable] policy statement."  USSG § 1B1.13, app. n.3; see also 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").  The Court acknowledges and commends Tovar's efforts to improve himself and overcome his drug addiction while incarcerated; however, his rehabilitation combined with the other grounds he raises does not rise to the level of extraordinary and compelling, as contemplated by the statute and the policy statement.

       3.     COVID-19

Lastly, while sympathetic to Tovar's concern regarding the effects of COVID-19 in the federal prison system, the Court does not find that his circumstances clear the high bar necessary to warrant a sentence reduction.  As the Third Circuit Court of Appeals recently commented, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."  United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).  District courts have concluded similarly.  See, e.g., United States v. Eberhart, Case No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence. . . .").

9

USP Tucson has reported no active confirmed cases of COVID-19 among inmates and only three cases among staff members.[7] See BOP: COVID-19 Update, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited June 30, 2020). The Centers for Disease Control has identified diabetes as an underlying condition leading to a higher risk for severe illness. People Who Are at Higher Risk for Severe Illness, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited June 30, 2020). However, Tovar has not shown that this relatively common condition among federal inmates cannot be adequately treated by the facility. See United States v. Ramos, No. 14 Cr. 484 (LGS), 2020 WL 1685812, at *2 (S.D.N.Y. Apr. 7, 2020) (denying compassionate release for a 41-year-old chronic and severe asthmatic where medical records showed no new asthma attacks and condition being treated by BOP); United States v. Gileno, No. 3:19-cr-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) (denying compassionate release for a defendant with high blood pressure, high cholesterol, asthma, and allergies who had not shown that the facility was specifically unable to adequately treat his conditions). Further, at 56 years old, Tovar's age does not independently place him among those at higher risk for severe illness. Finally, the BOP has undertaken an extensive response effort to prevent and mitigate the spread of COVID-19 in its facilities, including screening, visitation, and social distancing measures. See BOP Implementing Modified Operations, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited June 30, 2020). Accordingly, Tovar's assertions regarding the risk of contracting COVID-19 while incarcerated do not present an extraordinary and compelling reason for a sentence reduction.

---

[7] A staff member at USP Tucson who was previously diagnosed with COVID-19 has since recovered.

### C. Appointment of Counsel

The Court also declines to appoint Tovar counsel. While the Court has appointed counsel for other inmates seeking compassionate release upon the request of the Office of the Federal Public Defender ("FPD"), the appointment of counsel for the purpose of preparing a compassionate release motion is neither required by the Constitution nor by statute. Such a request was not made by FPD in this case, and the Court finds that the interests of justice do not require the appointment of counsel for Tovar.

## III. CONCLUSION

The Court has reviewed the record, the parties' filings, and the relevant legal authority. For the reasons above, Tovar's motion to reduce sentence (Doc. No. 513) and motion to appoint counsel (Doc. No. 514) are **DENIED**.

**IT IS SO ORDERED**.

Dated this 1st day of July, 2020.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court